The next case before the court is Applications in Internet Time v. RPX Corporation, 171698. Mr. Sereboff, did I pronounce that correctly? Yes, Your Honor. You are hoping for a five-minute rebuttal. Again, we'll see how that goes based on how much questioning you get. But we'll try to reserve that. Thank you. Okay. You may proceed. Your Honor, we have three important issues here of public policy that impact more than just our case alone, but probably a lot of other cases. The first issue is standing. But quite frankly, I think that issue is pretty well sailed. After our briefing was completed, the court's decision in personal audio came down, and it seems that we don't have much of an issue to argue today. You can preserve your objection to personal audio, but we're bound by that. Yeah, yeah. I mean, if we had 15 of your colleagues here today, we could talk about it, but it's not worth spending time on that. I think the more interesting issue that's related is real party and interest proxy and privilege. As the court recognized about a month ago in the Wi-Fi One case, and clearly we're very honored today to have the three of you in this panel because of Judge Rayna authored the opinion, Judge O'Malley, you authored a concurrence. Okay, it's still the court's opinion. Of course. Go ahead. We certainly have three experts on this issue today. You probably better get to your argument. You don't have that much time. Thank you, Your Honor. I think it's pretty clear that this is an issue that is both important and one where the Patent Office has been handling it improperly and consistently improperly. When you look at the record of decisions that the Patent Office has made on this issue, and we addressed that in our reply, 178 decisions that were all— Can you just address—I know you cited a lot of decisions. I certainly didn't read every single one of them. It wasn't very helpful. Address what the legal error in the board standard is. Your Honor, the legal error is that they failed to even consider that a party may be a privy and not just a real party in interest. Did you argue that to the board? We argued that Salesforce was a proxy to RPX and that, in general, at that stage, at the petition stage, the only question was whether there was a real party in interest properly named or not. The board's opinions were consistently that the only opportunity to challenge real party in interest or privy— Either the petition had properly named real party in interest. That's what the rules said. Did you name all of the real parties in interest? There's nothing in the rules that require a petitioner— Well, there is no actual rule, is there? No, I believe there is a rule that requires that a petitioner— There's a rule that talks about what needs to be disclosed, but there's no rule that defines what any of these statutory terms mean, is there? Correct. Correct. Okay, so you spend a lot of your time arguing about what the guide says or doesn't say and how you fit in the guide or don't fit in the guide, but I don't see much discussion of what the statute says. It's because I don't think that the statute says much here. Well, 315B does say real party of interest comma privy, so it mentions privy there. And I guess what you're arguing is if you're a proxy, you're in privity. There's privy there. You know, honestly, Judge Moran, I don't know that it's entirely clear. You know, similar to the issue that we have on the difference between in light of and consistent with, there isn't a lot of legal precedent on this issue of what the difference is between a real party and interest and what a privy is. Well, isn't that because before WIFI won, we weren't allowed to look at it? Exactly, yes. But now we are allowed to look at it, right? Correct. So, of course, there's not any legal authority for the proposition yet. That's what I'm trying to ferret out. Right. What's the legal issue? So the legal issue is how much of a relationship does there have to be for an unnamed party to actually be a real party and interest? Right. So the question is what did Congress contemplate in the statute, right? Exactly. Thank you, Judge O'Malley. I think the congressional record is pretty clear that Congress did not intend parties to have a second bite at the apple. Salesforce clearly had a first bite at the apple. They filed their petitions for CBM. The petitions for CBM were denied. But they only had a second bite at the apple if they're a proxy or a privy or a real party at interest. You're not answering the question. What legal standard do you think we should apply in determining whether somebody is a real party and interest via this proxy or privy theory? I think, Judge Hughes, that's a great question. I think that if the petitioner is a membership organization and any of its members has an interest in the outcome, a direct interest, that sure looks like a privy to me. It looks like a real party and interest to me. What legal authority for that is there? I mean, you're just giving anecdotal evidence saying this is a privy, this is not, this is. What standard should we apply? You know, this is an opportunity to make new law, Your Honor. I don't think that there is. But you're not telling me what law to make. What law do you want me to make? What definition of proxy or privy should I apply in this statute and where should I draw it from? So I think that when there is a contractual relationship between the petitioner and the unnamed party that suggests that there is some measure of, you know, that the petitioner is acting on behalf of the unnamed party. In the litigation. Exactly. In the litigation or even outside of the litigation. Why outside of litigation? What does that have to do with it? Because there's certainly instances where an unnamed party might have a direct interest in the outcome. So, for example. Is a direct interest in the outcome enough? I would think so, yes. So if Uber institutes an IPR on a patent that relates to its self-driving cars and loses. In Waymo, it tries to institute another. Are they barred because Uber is really a real party in interest because they would also benefit from having that same patent invalidated? Even though there is no contractual relationship, they're actually opposing companies trying to develop that car. I mean, it can't just be that you have an interest in getting the patent invalidated. Because lots of unconnected parties that aren't proxies or privies would have an interest in getting a patent invalidated after they'd already lost. Absolutely. And that's why I think a contractual relationship is something that's pretty important. A contractual relationship to do what? Where there is maybe not necessarily just a contractual. Because there could be a legal relationship as between a parent and a child or affiliated corporations. But where the petitioner is acting on behalf of the unnamed party. And how do we determine that? Well, it could be that, like I said, there is a corporate relationship. Or an agency relationship. Exactly, an agency relationship. Did you do any discovery as it relates to RPX other than that declaration? Do you know what, Your Honor? We tried to do more discovery than what the PTAB allowed us. And this is part of how the board has been shutting patent owners down. Is that when a patent owner goes to the board and asks for discovery, the standard that the board has basically, the patent owner has to effectively prove that there is an unnamed real party in interest just to get discovery. Did you argue that it was error for the board to deny you the additional discovery you sought? No, I didn't. Well, then how is that relevant? I mean, if you had preserved an objection and said the board gave us some discovery, we found it insufficient, we asked for more, it was necessary, and it was an abuse of discretion to deny that, we could consider it. But how can you now complain about insufficient discovery when you haven't argued that the board erred? You know what, Your Honor? I think that there is a limited point of futility in some cases. So, you know, this is an issue where the board consistently was being just stonewalling patent owners. Well, isn't that precisely why you tell us that the board is improperly applying its discovery rules and asked us to correct it? I mean, I know it's a high standard, but if the board's not allowing discovery when it should, that's something we can say, but we can't reach that issue if you haven't preserved it for appeal. I agree. Now, we do believe that there's enough evidence in the record that you can decide that there is an unnamed real party in interest or a privy here. So while we believe that we should have gotten more discovery— Well, before, when you were discussing the legal standard, you talked about affiliated corporations. Is there any evidence on the record that Salesforce and RPX are affiliated corporations? You know, there is some evidence, but I don't think that that's the strongest evidence. I think the overlap of board members has some, but that's not really what I was getting at when I was talking. Lots of corporations have overlapping board members that aren't related. And you've got, you know, you point out that Salesforce has funded RPX to the tune of already $4.5 million, probably more because when this happened, there was negotiations about more funding. Do you know whether RPX gets funding from anyone other than those members it purports to represent? Before you answer that, I do want to get something clear. Some of this information is more confidential, and we need to make sure that we can ask you the right questions because this is an open court. But a lot of information, the stuff we're talking about now, is more confidential. Are we able to discuss this now? You know what, Your Honor, I think that the confidentiality restrictions are pretty tight, and rather than Well, I mean, you can waive it for your information. I'm wondering about the appellee for purposes of the argument. I mean, because the record and the things we're talking about are blocked out in yellow. Absolutely. What I can tell you is in advance of this hearing, the appellee did let us know that they feel very strongly that all of the confidentiality that they claim should be retained. But then how do we determine what facts are relevant if we're not allowed to know what the facts are or discuss what the facts are? Well, I would imagine, Your Honor, that the facts could be discussed amongst yourselves, or we could discuss things in more hypothetical terms. Or we can seal the courtroom, but you should have notified the court. We should have gotten some sort of notice about this, I think. Or objected to the breadth of the confidentiality. Well, you know, as far as what's confidential, there were primarily two items that were probably, that I recall, are indicated as confidential. I think that those two items are pretty compelling. Without me identifying what those are, I think that between us, we can all say that those are some pretty compelling facts. And that if you just look at those facts alone, along with the public statements made by RPX about, you know, acting on behalf of its members and acting as an extension of the in-house legal department, helping its members to control their patent liabilities, it starts to make a pretty compelling case here that RPX was not just, you know, some lone vigilante, but they were actually acting on behalf of Salesforce. Were they acting at the direction of Salesforce? You know, the... Were they an agent of Salesforce? We believe so, Your Honor. And what evidence is there to show that? You know what, there is no evidence because... Well, then you can't argue it. I know that you wanted more discovery. You didn't get it. You didn't appeal it. You can't surmise what happened. You have to rely based on the evidence. And so I think you just conceded, and I didn't see any evidence, that there's anything that would establish a specific agency relationship. So that's a good question. So whether there... What is the scope of the agency here? I think it's pretty clear that by contract, an organization such as RPX could be acting as the agent of others. And the evidence of record shows that... Is that because these people pay in money to RPX, and then RPX makes a decision? Let's assume it's an independent decision to go file an IPR. Is that enough for an agency relationship in your view? I'm sorry. So if the IPR is for a member? It's not for a member. That's the whole point. They pay in money. RPX decides which patents to IPR or not. It's not at the direction. It may tangentially or directly benefit them, but there's no connection. Is that enough for a real party in interest privy determination? I think so, Your Honor. Why? Otherwise, what we have is essentially... Let me ask you this. Suppose you have a nonprofit entity that acts... At least its mission statement is purported to be for the public good. It gets donations from a lot of sources, including the industry. But it makes independent determinations about which patents to IPR or not. Are companies that will benefit from those IPRs real parties in interest to that public interest organization? Yes, I think so. You think Congress had that broad meaning of a... Isn't that just virtual representation? Isn't that the point, though? Well, isn't that what the Supreme Court rejected in Taylor v. Sturgis? That virtual representation was not good enough to bind an unaffiliated party and stop them. Well, so again, it's... Have you read Taylor v. Sturgis? I mean, I don't understand why we're not talking about Taylor v. Sturgis, which seems to me to be the most relevant precedent from the Supreme Court. Sorry, I've taken that too long. Do you concede that Taylor should control here? You know what, Your Honor? I can't say that I'm familiar enough with the case to say, but... Okay, your time's up. We'll give you three minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honors, and may it please the Court. I'd like to address, if I can, both the claim construction issue and the real party and interest issue. I'd like to just start... We're interested in the real party and issue, and you didn't. There was no discussion of claim construction from the other side, so we're going to stick with the issue that was actually addressed in argument. So let me begin where we left off. I have a real problem with the notion that the PTO decided in its guide that Taylor is the mantra that it should follow, putting aside whether the PTO is even interpreting its own guide in this case properly, because I think there's a good argument that they're not. But Taylor is in a totally different context. Congress, when it discussed RPI, cited California positions. It did not cite Taylor. So why aren't those cases that Congress actually pointed to the cases that we should be looking at to determine what the scope of RPI is here? I think it was clear from the congressional history that what Congress intended generally was that the common law would apply and would control, would inform the real party and interest. But there was a discussion in the legislative history that we should be assessing this question broadly, and there were actual cases cited that talk about how broadly this should be assessed. Not one of them, not one. Taylor was never cited. So why are we focusing on Taylor? For our part, what we're focused on are all of the factors that came out of all of those decisions as reflected in the PTAC trial guide, which cites Taylor, cites California positions in other cases, as well as has been applied. Where does it cite California positions? And what does it say? It says basically Taylor controls. In the PTAC trial guide, Your Honor, in the Federal Register, it's page 48759. The PTAC trial guide says, in discussion of privity and real party and interest, the concept refers to a relationship between the party to be estopped and the unsuccessful party in the prior litigation, which is sufficiently close so as to justify application of the doctrine of collateral estoppel, and then cites California positions. So the way I interpreted this is that you have two doctrines, and they're basically flowing in different directions. Real party and interest refers to does the unnamed party, Salesforce, was the IPR essentially filed at their behest? And then there's a list of factors that go into that. Funding, control, direction, strategy, et cetera. On the other side, the way I understand the privity inquiry is whether RPX, for its part, was insufficient, which it wasn't, of course, was in sufficiently close activity in the litigation. Of course, RPX wasn't involved at all in the litigation, such that a determination on matters with Salesforce during the course of litigation. There was no discussion whatsoever about the IPRs. The discussion, as reflected in the declaration of RPX's executive about the litigation, was basically limited to the fact that the litigation had been filed. And discussing also CBM, the CBM. Well, Salesforce filed its CBM with no involvement whatsoever in RPX. I'm not aware of any discussion between RPX and Salesforce about the CBM. Would you categorize the services that you provide similar to that of an insurance company? There is an insurance component to it. The primary... So, and you're the insured. Let's say you're the insured, there's an insurer.  You're the insurer, correct? Well, actually, that's a separate line of business that I don't believe Salesforce participates in. The primary business of RPX... But let's stay with this line of business here. You're the insurer, Salesforce is the insured. Doesn't that give rise to fiduciary obligations? So, in this case, RPX's primary line of business, which... We're getting into the confidential information, but I want to make sure I answer your question. So, RPX's primary line of business, for which it has many clients, I can say that, is that it acquires patents and then it offers its members a license to its entire portfolio to, in an overall sense, reduce their patent risk. It separately has a business... That's correct. That's the basic model that an insurance company operates under, correct? That's correct. And so, as the insurer, you have an obligation to take action if certain circumstances arise that affect or create risk to the insured. In this case, there's... The record is clear. It had absolutely no obligation to Salesforce with respect to these patents. That's crystal clear from the record, from the declaration of Mr. Chuang, RPX's executive who was involved in the filing of these IPRs, which, by the way, it's very important to get this out. Are you familiar with the subrogation aspect of an insurance claim? Not particularly, Your Honor. I'm pretty much a patent litigator. But what I can say, what I want to be very clear, two things. One, there was extensive discovery on real party interest in this case. It wasn't like WIFI-1 and some of the prior cases where the board had denied discovery, and it can be sometimes difficult to get discovery from the board. Here, AIT got extensive discovery from the board on real party interest. The board reviewed it all, and two things came out of it. One, Mr. Chuang submitted a 21-page declaration explaining exactly all of the reasons why RPX chose to file these IPRs for its own benefit. And then AIT decided not to cross-examine it. So I realize they also waived any objection, as Your Honor, Judge Hughes said, to any alleged lack of discovery, but they also made a choice not even to cross-examine the witness who put in that evidence. So his declaration itself, which explains the reasons why RPX filed these for its own benefit and not for Salesforce's benefit, it constitutes substantial evidence. Here's my problem with this. I mean, look, you can all arrange your business in a very clever way to suggest that you're not doing this on the behalf of certain specific members, and the evidence may just not be there. But isn't the understanding that in addition to the cross-licensing you get by paying dues or whatever you call them, I assume you call them licensing fees, but also that RPX will now, because it's able to, file IPRs against patents that the invalidation of which will further members' interests? So it is true that any time an IPR is filed and is successful in invalidating a patent, some parties will benefit, as you noted. In fact, this court— Have you ever filed IPRs against patents that didn't affect a single one of your members' interests? Yes. In fact, in Mr. Chuang's declaration, he specifically listed one such case, and I believe there are more cases than that, but he did specifically list one case. What are we to make of the fact that you were negotiating for more money from Salesforce at the same time you filed this IPR? I don't think that's correct, Your Honor. There was an issue raised below that was not argued on appeal about the rate of payment for this particular client, and that was set in a 2012 agreement before even the lawsuit had been filed against Salesforce. It was totally independent. It had nothing to do with this. So you have, on the one hand— I don't want to delve into confidential information, so if you can't answer this, don't. And I suspect you can't, but does the funding work in terms of general licensing fees and support, or is there any sense that this is divided up into a payment for cross-licensing and a payment for IPR services? I think I can answer that unequivocally, that there is no payment for IPR services. Well, there's payment for services generally, right? Generally. Which would necessarily include IPR services. What RPX does, as a general matter, is it seeks to, first of all, reputational benefits to itself, as well as to lower risk overall across the industry, including but not limited to for its clients, by attacking facially invalid patents. The payments are to lower risk on behalf of the clients. I think that's fair to say. Okay. Let's get back to first principles for a minute. So do you agree with me that we are undertaking a statutory analysis here? Section 315B uses the phrase real party and interest and privy, so obviously we need to have an understanding of what those terms mean. I agree. Okay. And the guide is not a rule. There were comments asking the PTO to establish a regulation or a rule defining what those terms mean, and the PTO did not do so. Instead, it just created a guide, right? I'm not familiar with that level of detail of the PTO's rulemaking. So the PTO would not be entitled to Chevron deference with respect to the guide. The guide, at best, is entitled to Skidmore deference. If that's the way it played out. Well, these are important issues. I mean, you know, this is an administrative body. I think, Your Honor, what I would focus on is that all of the factors, no matter which case or which common law you look to, all of the relevant factors only come out one way here. So funding, it's unequivocal in the record. Salesforce provided no funding for these IPRs. They didn't have any input into counsel, into prior art, into experts. Well, you don't have to be paying for the IPR to fall within the privy language, do you? I'm not saying you have to be. It certainly would be a significant factor. But it's not a determinate factor. I'm not suggesting that it's determinate. And you don't have to be in an agency relationship in order to fall within the privy language, do you? Well, the way it's been articulated to date, and obviously this Court may put a finer point on it, it's a totality of the circumstances test. And the circumstances that have been looked at are funding, direction, control, involvement, and whether an IPR was filed essentially at the behest of a party. None of those, not one of those things is the case here. In fact, the record is clear that Salesforce did not even know these IPRs were being filed until afterwards when they had to be notified because of the ensuing discovery activity. So there was absolutely no involvement whatsoever. And with respect to the privy language that AIT raised, two things. One, they never raised it below, so there was absolutely nothing for the board to adjust. They argued proxy, correct? They used the word proxy. That's right, not privy. But the question was whether or not you satisfied 315B. I mean, they don't have to say what every word of the statute is. The statute says what it says. Right? I understand. I just wanted to point out that at least the way it's been articulated thus far. So isn't it air on behalf of the agency not to address privy under 315B? The argument had never been made by AIT. There was nothing for them to address. They had argued that. Well, they argued proxy. They argued proxy is just a word. It's not in the statute. But even their own guide talks about how much broader the concept of privy is, and there's lots of language in the guide that was never even considered in this particular case. Isn't that right? The board in this case did not, to my recollection, undertake a detailed review of the language in the guide. The board, the PTAB, has, in numerous decisions, discussed its own view of real party and interest in privy. For example, there's a case that I wanted to talk about. But its view is either what's in the guide or what's in the statute. I mean, we can't say that because they said what they thought in one case, that therefore that controls for all cases. I'm not suggesting that it does, but in terms of the precedents that we have since this issue hasn't come to this court, the PTAB's precedent, for example, in Aruz Gaming, IPR 2014-01288, explained that on the privy side, the question is, was the IPR petitioner involved enough in the litigation that they would be collaterally estopped from? Right. And we know that requiring that as the standard is not right, is not correct, right? I mean, even under Taylor, that wouldn't be correct. Taylor lists out... So all you're doing is telling us that the PTAB over and over is just picking an issue that can't be satisfied and using that as their test. Well, Taylor lists a number of factors which include, you know, factors that go to the whole issue of control, direction, funding, et cetera. None of that was present here. So I understand that this court has to grapple with what the proper test is since so far only the PTAB has addressed that issue. What I'm saying is that on the facts here, no matter how you articulate that test and which common law precedents you use, RPX is not going to be found... Salesforce is not going to be found to be a real party in interest of RPX, and RPX will not be found to be a privy of Salesforce. So you think we should just say this is a case of first impression and we don't really care what the statute says or what the guide says? We're just going to say that, you know, the result would be the same no matter what test it should be? I'm not suggesting that you should take a cavalier approach, Your Honor. All I'm saying is that the extensive discovery that occurred didn't turn off any factors that have been listed in any of the precedents that have been applied at least by the board or in the guide or cited in the guide that would suggest a real party in interest. Shouldn't we just vacate and send this back and have the PTO redo this particular question with a little bit of guidance from us? Well, I don't think that you need to do that given the extensive discovery that occurred here and the... Since it looks like the PTAB did not address, as you acknowledge, certain common law principles with respect to privity and real party of interest or even proxy as under Taylor. Shouldn't we ask the PTAB to address those? Well, I think you might need to do that if there were any indications that any of the factors that would be relevant existed here, but it's clear... It's not enough that they failed to address these specifically in the final written decision? The final written decision addresses all of the potentially relevant factors. Funding, control, direction... But no, it doesn't even discuss a lot of the factors that are listed in the guide, does it? Those are the primary factors that the guide addresses. Funding, control, direction, involvement. There was none of that. There was no evidence that Salesforce had any involvement whatsoever or even knew that these things were being filed. All right, your time is up. Thank you. Thank you, your honors. I've refreshed my memory about Taylor. So, in looking at the appendix page 317, this is the excerpt from the trial practice guide, I do agree that Chevron deference is not necessary here. I think that Skidmore is the more appropriate standard. The trial practice guide was not rulemaking. And what's notable is that the trial practice guide even recognizes, quote, the notion of privity is more expansive than real party and interest, encompassing parties that do not necessarily need to be identified in the petition as a real party and interest. I think that's really the heart of the issue here. And Taylor, you know, even the trial practice guide recognizes that Taylor provides a framework, but it doesn't establish a definitive taxonomy. Of course, that doesn't solve the problem for you, your honors, in what the definitive taxonomy should be here. And I know that's what Judge Hughes was struggling with. But I think that where there is a clear agency relationship that the petitioner is acting for the interest, without the explicit direction of its member, of its client. How is that an agency relationship? I think it's no different than a law firm acting on behalf of a client. You are aware of law firms that independently undertake to do things without the client's specific direction? I would like to look at that law firm. You know what, your honor, I think that's part of... Isn't that the whole point? The client says, go out and accomplish X goal for me. The law firm may exercise some discretion in how it does it, but it certainly doesn't go willy-nilly, file a lawsuit or something like that without the client's express permission. I mean, it sounds like that would violate ethical rules. So, you know, in the appendix at pages 28 to 30, we've got some excerpts from RTX's own literature that talks about what their business is and how they serve their clients, how they serve their members. And excerpts from their own public filings, SEC filings. You know, our mission is to transform the patent market by establishing RTX's... Is that in the record? I'm sorry? Is that... Yeah, this is appendix page 31. Okay. It says, our strategy. It's right in the middle, your honor. Our mission is to transform the patent market by establishing RPX as the essential intermediary between patent owners and operating companies. So when a company hires, excuse me, becomes a member of RPX, they are hiring RPX to do these things. Now, it may not be that they have to specifically ask RPX to do something. You know, it's like, look, when my client hires me to do something, I go and I do it. And sometimes there are things that I have to go back to my client and ask for permission for, but there's a lot of discretion here. Including, if you look at the bottom of that page, 31, it says, including the facilitation of challenges to patent validity. These are exactly the kinds of things that RPX does for its members.  Any last words? You're out of time. No, thank you, your honor. Thank you.